**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HALL STEEL COMPANY,

      Plaintiff,                                                     Case No. 05-70743

v.                                                                         Hon. Gerald E. Rosen

METALLOYD LTD.,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO CONFIRM FOREIGN ARBITRAL AWARDS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    June 7, 2007

PRESENT: Honorable Gerald E. Rosen
                     United States District Judge

## I. INTRODUCTION

Plaintiff Hall Steel Company commenced this action in a Michigan circuit court on January 31, 2005, asserting breach-of-contract and conversion claims against Defendant Metalloyd, Ltd. arising from Defendant's shipment of steel coils that allegedly did not meet Plaintiff's specifications. Defendant obtained payment for this shipment through a letter of credit arranged by Plaintiff, but Plaintiff alleged in its complaint that this payment was improper in light of the deficiencies in Defendant's steel shipment.

Defendant subsequently removed the case to this Court on February 25, 2005, citing diversity of citizenship between Plaintiff, a Michigan company, and Defendant, a

foreign corporation based in London, England. Shortly after removal, Defendant filed a motion to dismiss or stay this proceeding, contending that the parties' dispute was governed by an arbitration agreement that was enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Following an initial evidentiary hearing, and just prior to the continuation of this hearing, Plaintiff and its counsel conceded that the parties' dispute was subject to arbitration under the parties' agreement. Accordingly, by order dated February 14, 2006, the Court remanded this case for arbitration in London, England in accordance with the parties' agreement, and retained jurisdiction only for the limited purpose of enforcing any subsequent arbitration awards.

By motion filed on March 1, 2007, Defendant now seeks confirmation of two such awards made by the London arbitrator. Notably, neither of these awards touches upon the parties' underlying contractual dispute. Rather, in the first of these awards, dated March 16, 2006 and labeled an "Interim Final Arbitration Award," the London arbitrator found that Plaintiff was liable to Defendant for the costs reasonably incurred by Defendant before this Court in litigating the existence of Plaintiff's obligation to submit its dispute to arbitration rather than seek judicial recourse. The London arbitrator then issued a second award, dated November 29, 2006 and entitled an "Interim Final Arbitration Award of Assessed Costs," in which he determined that the costs incurred by Defendant in this endeavor totaled £57,516.61 plus $218,622.89, or roughly $332,000 in all. Through the present motion, Defendant seeks the confirmation of these two awards, as well as the entry of a judgment against Plaintiff encompassing the arbitrator's determination of costs

2

plus interest accruing from the date of the arbitrator's initial March 16, 2006 award.

In its April 17, 2007 response opposing this motion, Plaintiff advances two reasons why, in its view, the arbitrator's awards cannot be confirmed at this juncture. First, Plaintiff contends that the awards are merely interim, and not final, and hence are not yet eligible for confirmation under the governing law. In a second, related argument, Plaintiff asserts that it would violate due process principles to order the payment of a substantial amount pursuant to awards that do not purport to even address, much less resolve, the substantive dispute that the parties have agreed to arbitrate. For the reasons stated below, the Court finds merit in Plaintiff's first contention, and thus need not consider at this time whether there might be other grounds for declining to confirm the arbitrator's awards.

## II. ANALYSIS

### A. The Standards Governing Defendant's Motion

Both the United Kingdom and the United States are signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is commonly referred to as the "New York Convention" and incorporated into this nation's law at 9 U.S.C. § 201 *et seq.* The parties are agreed that the two awards made by the London arbitrator in this case are within the ambit of the New York Convention, see 9 U.S.C. § 202, and it is likewise clear that this Court has subject matter jurisdiction over Defendant's request for confirmation of these two awards, see 9 U.S.C. §§ 203, 207.

Under the federal law implementing the New York convention, "[w]ithin three

years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The court, in turn, "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. In opposing Defendant's present motion, Plaintiff relies principally upon the Convention provision that permits refusal of confirmation on the ground that "[t]he award has not yet become binding on the parties." New York Convention, art. V, § 1(e). Alternatively, Plaintiff suggests that Defendant's request for confirmation may be denied on the ground that "recognition or enforcement of the award would be contrary to the public policy of" the United States. New York Convention, art. V, § 2(b). Accordingly, the Court turns to these issues.

**B.     The Arbitrator's Interim Awards Are Not Yet Eligible for Recognition or Enforcement by This Court.**

Through the present motion, Defendant requests that the Court confirm two awards issued by the London arbitrator on March 16 and November 29, 2006. As its first ground for opposing this requested relief, Plaintiff argues that the two awards are not yet final, and thus are presently ineligible for recognition or enforcement by this Court. In support of this contention, Plaintiff points to the arbitrator's own designation of his awards as "interim." Plaintiff further notes that the two awards at issue do not purport to resolve, or even address, the underlying contractual dispute between the parties. Under these

4

circumstances, Plaintiff asserts that Defendant's request for confirmation is premature. The Court agrees.

Whether enforcement of an arbitration award is sought under the FAA or the New York Convention, the courts are agreed that the award in question must be "final" in order to be eligible for judicial confirmation. See, e.g., Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 233 (1st Cir. 2001); Publicis Communication v. True North Communications, Inc., 206 F.3d 725, 728-29 (7th Cir. 2000); Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414-15 (2d Cir. 1980). As the Second Circuit has observed, "[m]ost of the advantages inherent in arbitration are dissipated by interlocutory appeals to a district court," where such "applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and delaying tactics in a proceeding that is supposed to produce a speedy decision." Michaels, 624 F.2d at 414 (internal quotation marks, alteration, and citation omitted). And, as noted, the New York Convention evidently recognizes and accounts for this concern by expressly authorizing the courts to refuse confirmation of awards that are "not yet . . . binding on the parties." New York Convention, art. V, § 1(e).

Nonetheless, the courts have found that an arbitrator's award need not conclusively resolve all matters in dispute in order to qualify as "final" and eligible for confirmation. The Sixth Circuit has explained, for example, that "an 'interim' award that finally and definitively disposes of a separate independent claim may be confirmed notwithstanding the absence of an award that finally disposes of all the claims that were submitted to

5

arbitration." Island Creek Coal Sales Co. v. City of Gainesville, 729 F.2d 1046, 1049 (6th Cir. 1984) (internal quotation marks and citations omitted). Similarly, an arbitrator's characterization of an award as "interim" does not necessarily disqualify it from judicial confirmation, because "[t]he content of a decision — not its nomenclature — determines finality." Publicis Communication, 206 F.3d at 728.

Against this legal backdrop, the Court turns to the two awards at issue here. The arbitrator's initial March 16, 2006 award states at the outset that it is "an Interim Final Arbitration Award concerning liability for costs incurred as a result of legal action taken in the U.S.A." (Defendant's Motion, Ex. 3, 3/16/2006 Award at 2.) After recounting the general nature of the parties' underlying dispute and summarizing the prior proceedings before this Court, the arbitrator rejected Plaintiff's contention that he should address the substantive breach-of-contract dispute "before turning to the alleged breach of the arbitration clause." (Id. at 6.) Instead, the arbitrator reasoned:

> In my view, the proceedings in Michigan were discrete, and had no bearing on the proceedings on the substantive issue. The costs incurred as a result of the Michigan proceedings were incurred before the Parties could commence the substantive action in the forum agreed in the Contract of Sale. They were costs which were, by virtue of [Plaintiff's] concession, wasted costs. Since they were a discrete set of costs, with minimal bearing on the substantive issue, I do not accept that I should defer findings on these costs until the substantive issue has been determined.

(Id. at 7.) The arbitrator then concluded (i) that he had jurisdiction over the parties' contractual disputes, (ii) that Plaintiff was liable to Defendant "for the costs reasonably incurred by [Defendant] in the US proceedings, such damages to be assessed by this

6

Tribunal if not agreed," and (iii) that Defendant further was entitled to its costs in arguing the "issue of jurisdiction" before the arbitrator, with these costs again "to be assessed in due course by the Tribunal if not agreed." (Id.)

When the parties were unable to agree upon the amounts of costs to be paid to Defendant pursuant to the arbitrator's March 16, 2006 award, the arbitrator issued a November 29, 2006 "Award of Assessed Costs" and an accompanying statement of "Reasons for Interim Final Arbitration Award of Costs." (See Defendant's Motion, Ex. 4.) While the arbitrator accepted certain of Plaintiff's objections to the amounts sought by Defendant and discounted Defendant's claims of costs to some extent, he ultimately found that Defendant should be awarded (i) £57,516.61 in costs incurred by Defendant's London counsel, (ii) $198,073.22 in costs incurred by Defendant's New York attorneys, and (iii) $20,549.67 in costs incurred by Defendant's Michigan counsel. (See 11/29/2006 Award of Assessed Costs at 4.) The arbitrator directed that Plaintiff should "forthwith" pay these amounts to Defendant, together with interest accruing at an annual rate of between 6 and 6.5 percent from the date of the arbitrator's initial March 16, 2006 award. (Id.)

In seeking confirmation of these awards, Defendant points first to the arbitrator's determination that his awards concerned only the "discrete" matter of the costs incurred in the proceedings before this Court, with this matter having "minimal bearing" upon the parties' underlying contractual dispute. (See 3/16/2006 Award at 7.) Defendant further observes that the arbitrator seemingly has conclusively resolved this discrete issue,

7

without indicating in any way that he might revisit either the amounts of costs incurred by Defendant in these proceedings or Plaintiff's liability for these costs. Under these circumstances, Defendant contends that it has met the criteria adopted by the Sixth Circuit for confirmation of an interim award — namely, that such an award need not "finally dispose[] of all the claims that were submitted to arbitration," so long as it "finally and definitively disposes of a separate independent claim." Island Creek Coal Sales, 729 F.2d at 1049 (internal quotation marks and citations omitted).

In this Court's view, however, the Sixth Circuit's requirement of a "separate independent" claim is only a necessary, but not by itself sufficient, prerequisite to immediate confirmation of an interim award. Upon reviewing Island Creek Coal Sales and various other decisions in which the courts have found it appropriate to confirm interim awards, this Court discerns a common feature in addition to the "separate [and] independent" nature of the issue addressed in the award — namely, that the party seeking confirmation was able to identify an *immediate need* for relief. In Island Creek Coal Sales, 729 F.2d at 1047-48, for example, the parties' underlying dispute concerned the right to terminate a contract for the sale of coal, and the interim order at issue directed the parties to continue performing under the contract until the arbitrator had decided this underlying contractual issue.

Similarly, in Publicis Communication, 206 F.3d at 729, the arbitration tribunal accepted the contention of the party seeking confirmation, defendant True North Communications, that its claim for certain tax records was "extremely urgent," and the

court reasoned that "[r]equiring [all remaining] issues to be arbitrated to finality before allowing True North to enforce a decision the tribunal called urgent would defeat the purpose of the tribunal's order." See also Yasuda Fire & Marine Insurance Co. v. Continental Casualty Co., 37 F.3d 345, 348 (7th Cir. 1994) (allowing immediate enforcement of an arbitration panel's order directing the plaintiff to post an interim letter of credit "in order to protect a possible final award in favor of" the defendant, and citing the panel's "conclu[sion] that if it did not order interim relief [the defendant] would have to bear the risk that any final award it might win would be meaningless"); Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022-23 (9th Cir. 1991) (upholding the confirmation of "temporary equitable relief that is necessary to prevent a potential final award from being meaningless"); Banco de Seguros Del Estado v. Mutual Marine Offices, Inc., 230 F. Supp.2d 362, 368-70 (S.D.N.Y. 2002) (confirming an arbitrator's order that the plaintiff post a letter of credit to secure a possible award in the defendant's favor).[1]

The common thread of these decisions, in this Court's view, is that the courts have

---

[1] Apart from this line of cases, there is another set of decisions in which interim awards are confirmed under the premise that the parties themselves evidenced an intent to have the arbitrator address and resolve certain issues first and to act promptly upon this resolution. See, e.g., Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 235-36 (1st Cir. 2001); Metallgesellschaft A.G. v. M/V Capitan Constante. 790 F.2d 280, 282 (2d Cir. 1986). Defendant does not contend that this reasoning should apply here. Neither is there any indication in the two awards at issue that the arbitrator believed he was acting in accordance with the parties' shared intent in determining that his first order of business should be to decide upon Plaintiff's liability for the costs incurred by Defendant in the prior proceedings before this Court. To the contrary, the arbitrator acknowledged Plaintiff's objection to handling this issue first, but nonetheless decided that there was no reason not do to so.

9

insisted upon some reason to overcome their usual resistance to piecemeal confirmation of a series of interim awards as each one is issued in an ongoing arbitration proceeding. As one court has observed, the interim awards in each of these cases "constituted a form of prejudgment remedy that would be expected in any district court." TIG Insurance Co. v. Security Insurance Co., No. 302CV2206, 2003 WL 22289273, at *5 (D. Conn. Jan. 22, 2003). Under these circumstances, if the interim relief awarded by the arbitrator "is to have any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits." Pacific Reinsurance, 935 F.2d at 1023.

This justification for immediate confirmation is utterly lacking here. In the awards at issue, the London arbitrator assessed costs against Plaintiff for a threshold phase of the case, in which the parties litigated concerning the proper forum for resolving their contractual dispute. This was not the sort of prejudgment relief that a court might award to preserve the status quo during the ensuing proceedings, or to otherwise ensure that the arbitrator's final award on the merits is capable of meaningful enforcement. Rather, it was more akin to a judicial award of fees and expenses for, say, a discovery motion, see Fed. R. Civ. P. 37(a)(4), or for filing a motion or paper that is unsupported by fact or law, see Fed. R. Civ. P. 11(c)(2). Just as such a ruling would not be immediately appealable, see Cunningham v. Hamilton County, 527 U.S. 198, 210, 119 S. Ct. 1915, 1923 (1999),[2]

---

[2]The Court recognizes that the standards of "finality" for purposes of immediate appeal versus immediate confirmation are not precisely the same. See, e.g., Smart v. International Brotherhood of Electrical Workers, Local 702, 315 F.3d 721, 726 (7th Cir. 2002); Hart Surgical, 244 F.3d at 235 n.3. Nonetheless, the Court believes that the case law addressing the immediate appealability of interlocutory orders provides some guidance, at least, in determining whether the

the Court does not read the case law as supporting the immediate confirmation of an analogous arbitration award. Instead, the arbitrator's interim award of monetary relief in this case may readily be addressed along with his disposition of the parties' dispute on the merits, without any need for immediate judicial recourse in order to preserve the status quo while the arbitration proceedings are ongoing.[3]

Indeed, there is a particularly compelling reason in this case for the Court to proceed with caution in considering whether to immediately enforce the arbitrator's interim awards. The interim award of costs here, totaling over $330,000, is almost half again as large as the roughly $700,000 amount in controversy in the parties' underlying breach-of-contract dispute. Yet, the arbitrator found that Defendant reasonably incurred this substantial amount of costs in litigating only the ***threshold issue*** of the arbitrator's jurisdiction to decide the parties' underlying dispute. Under these circumstances, there is a ring of truth to Plaintiff's contention that Defendant is using the arbitrator's award of costs as a "whipsaw" to discourage or prevent Plaintiff from pursuing its breach-of-contract claim on the merits. Whether or not this is the case, the Court is unwilling to immediately confirm the arbitrator's sizable — and, in fact, rather staggering — award of costs, where Defendant does not face any sort of irreparable harm through delayed

---

interim awards at issue here are sufficiently "final" to warrant immediate confirmation.

[3]Notably, even the arbitrator himself evidently did not deem it necessary or appropriate to order immediate equitable relief to safeguard any potential future awards of costs. As Plaintiff points out, the arbitrator recently denied Defendant's request that Plaintiff be ordered to post security for any such costs that might be awarded.

confirmation, but instead is protected by the accrual of interest as ordered by the arbitrator.  See Middleby Corp. v. Hussmann Corp., 962 F.2d 614, 616 (7th Cir. 1992).

### III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's March 1, 2007 motion to confirm two foreign arbitral awards is DENIED.

                                                                s/Gerald E. Rosen  
                                                                Gerald E. Rosen  
                                                                United States District Judge

Dated:  June 7, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 7, 2007, by electronic and/or ordinary mail.

                                                                s/LaShawn R. Saulsberry  
                                                                Case Manager